1
2
3
4
5
6
7        IN THE UNITED STATES DISTRICT COURT

8        FOR THE DISTRICT OF ARIZONA

9
| | |
|---|---|
| United States of America, | ) |
| 10         Plaintiff, | )  CR 09-02456-TUC-RCC(EJM) |
| | ) |
| 11     vs. | )  **REPORT AND** |
| 12 | )  **RECOMMENDATION** |
| Donald Ritchie Jones, | ) |
| 13        Defendant. | ) |
| 14 | ) |

15         Pending before the Court is a Superseding Petition to Revoke Supervised Release

16   [Doc. 101], filed on August 29, 2016.  An Evidentiary Hearing took place on August 30,

17   2016. *See* Minute Entry 8/30/16 [Doc. 103].  Pursuant to LRCrim. 57.6, this matter came

18   before Magistrate Judge Markovich for an evidentiary hearing and a report and

19   recommendation.  The Magistrate Judge recommends that the District Judge, after an

20   independent review, find that the Defendant did violate the terms of his supervised release

21   as set forth in Allegation A and Allegation B of the Superseding Petition.

22   **Factual Background:**

23         The defendant, Donald Ritchie Jones, is alleged to have violated two conditions of his

24   supervised release imposed by the District Court on June 6, 2016.  Allegation A in the

25   superseding supervised release petition alleges that the defendant used illegal narcotics on

26   or about June 24, 2016, and Allegation B alleges that the defendant failed to comply with the

27   rules of a residential placement facility when he failed to return to that facility following his

28

1    hospital visit on June 21, 2016.[1]

2          The defendant entered denials of both allegations and an evidentiary hearing on the

3    violation petition was held before this Court on August 30, 2016.  The government called

4    three witnesses: United States Probation Officer (PO) Veronica Rivera; Danytza Arenas, a

5    staff member at New Beginnings Treatment Center; and Patrick Campbell, a registered nurse

6    at Tucson Medical Center.  The defense called Mr. Jones as a witness.

7          PO Rivera testified that the defendant was under her supervision at the time she filed

8    the violation petition.  (Tr. at 5, 23.)[2]  Although he was transferred to her caseload shortly

9    after he began supervised release, PO Rivera testified that she reviewed the conditions of

10   supervised release with the defendant - including the no-drug use and residential placement

11   conditions - and had him sign documents indicating that he understood all of the conditions

12   of supervision.  (Tr. at 5-14.)   PO Rivera testified about the defendant's adjustment to the

13   New Beginnings Treatment Center.  (Tr. at 14.)  The defendant started out fairly well at the

14   facility but soon began contacting her regarding his concerns about the safety of his wife and

15   that drugs were present and readily available at the facility.  (Tr. at 15-19, 27.)  Because the

16   defendant has a substantial substance abuse history and has used illegal drugs to self-

17   medicate, he was concerned that the presence of drugs would be a trigger for him using

18   again.  (Tr. at 15, 29.)  The defendant did not want to inform the staff at the facility because

19   he did not want to be a "snitch."  (Tr. at 27.)  PO Rivera did follow up with the New

20   Beginnings staff about the presence of drugs.  (Tr. at 28.)  PO Rivera also testified that she

21   called the defendant's wife to make sure that she had the phone numbers of law enforcement

22   agencies and women's shelters if she needed them.  (Tr. at 17.)  The defendant's wife already

23   

24         [1] The no-drug use condition was imposed at the defendant's sentencing on November
     7, 2011, and the residential placement condition was added at the defendant's Disposition
25   Hearing on a supervised release violation on June 6, 2016.  The original supervised release
     violation petition alleging failing to comply with the rules of the residential placement
26   facility was filed on June 24, 2016, and a superseding petition adding the drug use allegation
27   was filed on August 29, 2016.

28         [2] Citations to "Tr." followed by a page number are to the transcript of the evidentiary
     hearing conducted on August 30, 2016.

- 2 -

1   had those phone numbers and assured PO Rivera that she was in no immediate danger.  (Tr.

2   at 17.) [3]

3          PO Rivera was informed by staff at New Beginnings on June 22, 2016 that the

4   defendant did not return to facility following his approved request to go to a hospital on the

5   evening of June 21, 2016 and, for that reason, was being removed from the treatment

6   program.  (Tr. at 19.)  On June 24, 2016, PO Rivera received a phone call from a Tucson

7   Police Department officer who advised her that the defendant was found in a public park with

8   injuries requiring medical attention.  (Tr. at 23.)  The TPD officer told PO Rivera that the

9   defendant stated that he had been using drugs and was beaten up in the park.  (Tr. at 32-35.)

10  The defendant did not contact PO Rivera between June 21st and June 24th (Tr. at 24.).  PO

11  Rivera testified that she sought a supervised violation petition from the District Court on June

12  24, 2016, following her phone call with the TPD officer based on the defendant's failure to

13  return to New Beginnings.  (Tr. at 23-24.)

14         Danytza Arenas testified that she works in a security position at New Beginnings. (Tr.

15  at 36, 47.)  She identified the defendant in court and was familiar with his request to go to

16  the hospital on June 21, 2016. (Tr. at 36-37.)  She testified that the staff at New Beginnings

17  does not ask why a resident needs/wants to go to the hospital; the staff must honor a request

18  of a resident to go to the hospital.  (Tr. at 37.)  Ms. Arenas testified that she told the

19  defendant that he was to go to University Medical Center (although the correct name is

20  Banner) for treatment and that he was to call New Beginnings every two hours to check in.

21  (Tr. at 37-38.) The defendant called New Beginnings three times during the evening of June

22  21st and all calls were within that two-hour window.  (Tr. at 39-41.)  The first call was an in-

23  person conversation and the latter two were voicemail messages.  (Tr. at 39.)  The caller

24  identification on all three calls showed that they came from St. Joseph's Hospital.  (Tr. at 44-

25  46, 48.)

26

27

28         [3] New Beginnings also informed PO Rivera that the defendant had successfully
    completed a family visit with his wife over the weekend of June 18-19.  (Tr. at 19.)

1    Ms. Arenas testified that after the last message left at around 11:30 p.m., the defendant
2    did not contact New Beginnings later that night or the next morning, and he did not return
3    to New Beginnings.  (Tr. at 42-43.)  On June 22, 2016, Ms, Arenas called hospitals in Tucson
4    to see if the defendant had been admitted and also called law enforcement agencies to see if
5    he had been arrested.  (Tr. at 48.)  Neither the hospitals nor law enforcement had any
6    information about the defendant.  (Tr. at 48.)  For those reasons, the defendant was placed
7    on absconder status and removed from the program at her treatment facility.  (Tr. at 42.)  She
8    testified that the defendant did call her several days later and asked if he could come back
9    to New Beginnings, but that request was denied.  (Tr. at 43.)

10    The government introduced into evidence the defendant's medical records from St.
11    Joseph's Hospital from his visit on June 21, 2016.  (Ex. 3.)  Those records reveal that the
12    defendant arrived at the hospital at 8:53 p.m., and checked out at 11:10 p.m.  (Ex. 3 at p.
13    145.)[4]  The reason for the hospital visit was listed as "shooting pain and numbness down L
14    arm."  (*Id*.)  The records reflect a notation of an "incomplete visit" because the defendant left
15    the hospital "before Triage."  (*Id*. at 148.)

16    Patrick Campbell is a registered nurse who works at Tucson Medical Center (TMC),
17    and he assisted in treating the defendant's injuries when he was brought to the hospital on
18    June 24, 2016.  (Tr. at 50-52.)  Mr. Campbell identified the defendant in court and recalled
19    his treatment of the defendant.  (Tr. at 51.)  He testified that he starts by asking the patient
20    essentially "what happened" and, as reflected by the notes in the medical records, the
21    defendant told Mr. Campbell that he took "opiates in a park, became confused and got into
22    a fight with people in the park."  (Tr. at 55-56; Ex. 4 at 22.)[5]  As for the defendant's injuries,
23    Mr. Campbell noted that the defendant complained of left shoulder pain and had a small

24
25
26
      [4]  The citation to page numbers for exhibits are to the Bates Stamp number.

27    [5]  Mr. Campbell agreed with defense counsel on cross-examination that the defendant
28    likely did not say he took "opiates" as noted in the hospital records.  Mr. Campbell testified
      that he couldn't  "remember exactly what he said. I just kind of put them all in the same
      class, I guess."  (Tr. at 59-60.)

laceration on his head that was bleeding. (Tr. at 56; Ex. 4 at 22.)  Mr. Campbell testified that a urine drug screen of the defendant was conducted which revealed the presence of "opiates, benzos, meth, and ETOH" (alcohol) in the defendant's system.  (Tr. at 57-58; Ex. 4 at 19.) Mr. Campbell conceded on cross-examination that the urine screen did not reveal the amount of these substances in the defendant's system, when the substances were ingested, or if the defendant took them voluntarily.  (Tr. at 61.)  However, Mr. Campbell testified that the medical records also show that the defendant was administered Narcan, a drug used to combat an opiate overdose, by the EMS crew that arrived at the park where the defendant was found by TPD. (Tr. at 56-57, 59-60; Ex. 4 at 22.)  The defendant was later given an IV of Narcan by a doctor at TMC.  (Tr. at 57; Ex. 4 at 22.)

The defendant testified that he appreciated the concern that PO Rivera and the prosecutor had for him by recommending his participation in the treatment program at New Beginnings. (Tr. at 64.)  He testified that he viewed this treatment as a "new beginning" and admitted that has not had the best life, he has made bad decisions, and he often lied to avoid or minimize the consequences of his actions. (Tr. at 63-64.)  Indeed, he admitted that he lied to PO Rivera when he first began supervision. (Tr. at 64-65.)  The defendant explained his concerns about the presence of drugs at New Beginnings and that he was tempted to use given the access he had to drugs. (Tr. at 65-66.)  He testified that after dinner on June 21, 2016,  he and other residents had coffee in a group like they always do. (Tr. at 67.)  They use 20-inch Styrofoam disposable cups for their coffee. (Tr. at 67.)  The defendant testified that he became concerned that he mistakenly drank from someone else's coffee cup, and suspected it contained drugs because he began feeling "high" and not well; for those reasons he wanted to go to the hospital. (Tr. at  67-68.)  His request to go to the hospital was approved, and he was told that he should go to Banner Hospital (formerly UMC) and call in to New Beginnings every two hours. (Tr. at 68.)  He testified that his wife took him to Banner Hospital but there was a four-hour wait. (Tr. at 68-70.)  So his wife then took him to St. Joseph's Hospital, where he was told the wait time was two to three hours. (Tr. at 70.) He testified that he recalls speaking with another patient in the waiting room who was a

1    paraplegic.  (Tr. at 70.)  However, he later testified that he did not recall much about his time

2    at St. Joseph's, and his next memory is waking up handcuffed to a bed in TMC.  (Tr. at 71-

3    72.)  He has no recollection of what he did between the time he was at St. Joseph's on June

4    21st until he woke up at TMC on June 24, 2016, and has no recollection of voluntarily taking

5    drugs.  (Tr. at 72.)

6    **Findings & Recommendations:**

7          With respect to Allegation A, illegal drug use, the Court makes the following findings:

8          (1)     The defendant was aware that he had a no-drug use condition. He was advised

9    of that condition at his sentencing when the conditions of supervised release were imposed

10   by the District Court, and the Probation Officer also reviewed that condition with him.   He

11   was again advised of this condition at his Disposition Hearing on his first supervised release

12   violation and again by his probation officer when he was placed back on supervision.

13         (2)     The defendant admitted to his Probation Officer to using drugs to manage his

14   pain in the past and that he has a serious substance abuse problem.  Mr. Jones himself

15   admitted both in his testimony and to his Probation Officer that he was concerned about

16   drugs being at the New Beginnings Treatment Facility because their presence presented a

17   potential trigger for him to use illegal drugs.  In fact, he admitted that he was tempted to use

18   drugs while at New Beginnings because they were readily available.

19         (3)     Mr. Jones admitted that he has not made good decisions in his life, and has

20   repeatedly lied in the past to avoid taking responsibility for his actions; he also admitted to

21   lying to his Probation Officer when he first began supervision.

22         (4)     The defendant told the Tucson Police Department officer who found him in a

23   public park with injuries that he had used drugs and was beaten up.

24         (5)     The defendant told a nurse at TMC who was treating him that he had taken

25   drugs (opiates), became confused, and got into a fight in a park.

26         (6)     The urine drug screen conducted at TMC revealed that there were illegal

27   narcotics in the defendant's system, and he was given medication to counter an opiate

28   overdose that was clearly recent.

1    (7)    The defendant's explanation that he did not voluntarily consume drugs because

2    he may have drank from another person's coffee cup at New Beginnings Treatment Center

3    on June 21, 2016, and the coffee may have contained drugs is not credible or relevant to the

4    alleged violation for the following reasons.  The defendant left St. Joseph's Hospital on June

5    21, 2016, before receiving medical attention; his reported medical condition was arm pain

6    and numbness; he never returned to New Beginnings after leaving the hospital; he went

7    missing for three days until he was found with injuries in the public park on June 24, 2016;

8    and he never called his Probation Officer or New Beginnings during this three-day period to

9    explain where he was or what had happened.  Given the cordial relationship Mr. Jones had

10   with his Probation Officer, which included the defendant contacting his Probation Officer

11   about the concerns he had about both his wife's safety and the presence of drugs at the New

12   Beginnings facility, the Court finds that if the defendant was indeed "feeling high" after

13   drinking the coffee, he would have gotten in touch with his Probation Officer to report this

14   incident.  These facts undercut the credibility of the defendant with respect to what was in

15   that cup of coffee, how he felt after drinking it, and the reason he went to the hospital.

16   Finally, the defendant's proffered explanation about drinking coffee from another person's

17   cup that may have been laced with drugs does not explain his three-day absence during which

18   he would have had to sought out additional drugs given the treatment he received for a drug

19   overdose on June 24, 2016 - three days after he drank the coffee he suspected contained

20   drugs.

21   Based on these facts, the Court finds that the government has proven by a

22   preponderance of the evidence that Mr. Jones violated his conditions of supervised release

23   by using illegal narcotics on or about June 24, 2016.

24   With respect to Allegation B, failing to comply with the rules of a residential

25   placement center (*i.e.*, the New Beginnings Treatment Center), the Court makes the

26   following findings:

27   (1)    The defendant was aware of the Special Condition that he had to reside at New

28   Beginnings Treatment Center and follow all the rules imposed by that facility as ordered by

1    the District Court at the disposition hearing on the first supervised release violation.

2            (2)     The defendant did not leave New Beginnings with the intent to never come

3    back given that he requested permission to go to the hospital, and did place several calls to

4    New Beginnings while he was at the hospital as instructed by staff at that facility.  However,

5    the defendant subsequently decided not to return to New Beginnings after his hospital visit

6    and never apprised the staff of the facility or his Probation Officer of his whereabouts.  As

7    detailed above, he was found by TPD three days later in a public park with injuries and

8    reported to the officer that he had used drugs and was beaten up.

9            (3)     The concerns that the defendant had for the safety of his wife and the fact that

10   she took him to the hospital on June 21, 2016, also weigh in favor of the conclusion that

11   while the defendant did not plan to leave New Beginnings when he first went to the hospital

12   on June 21, 2016, he subsequently voluntarily made that decision after he left the hospital

13   before getting medical attention.

14           Based on these facts, the Court finds that the government has proven by a

15   preponderance of the evidence that the defendant violated his conditions of supervised

16   release by failing to comply with the rules of the residential placement facility when he failed

17   to return to the facility after his hospital visit on June 21, 2016.

18           These Findings and Recommendation that the defendant's supervised release be

19   revoked are referred to District Judge Collins.

20           Pursuant to 28 U.S.C. §636(b) and rule 59(b)(2) of the Federal Rules of Criminal

21   Procedure, the parties have fourteen (14) days to file any objections to these findings and

22   recommendations.  No reply shall be filed unless leave is granted by the District Judge.

23   ///

24

25

26

27

28

If objections are filed, the parties shall use the following case number: **CR 09-02456-TUC-RCC.**

DATED this 6th day of September, 2016.

_____

Eric J. Markovich
United States Magistrate Judge